UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATHLEEN NORTON,

                Plaintiff,                      Case No. 13-cv-13730

v                                                      Honorable Thomas L. Ludington

LTCH d/b/a McLaren Bay Special Care and BAY
REGIONAL MEDICAL CENTER d/b/a McLaren
Bay Region,

                Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kathleen Norton brought suit against her former employer alleging interference and retaliation in violation of the Family Medical Leave Act (the "FMLA"). Norton had been employed with Defendants[1] for over seventeen years when she began suffering from severe medical conditions that forced her to miss work. After Norton's employment was terminated, she sued Defendants for violations of her rights under the Family Medical Leave Act.

On June 20, 2014, Defendants moved for summary judgment on Norton's claims, claiming that she has not established a prima facie case of FMLA interference or retaliation. Because Norton admits that she did not provide Defendants notice of her intent to take FMLA leave as required for FMLA interference and retaliation claims, Defendants' motion for summary judgment will be granted.

---

[1] Norton was employed by Defendant LTCH d/b/a McLaren Bay Special Care, and Defendant Bay Regional Medical Center d/b/a McLaren Bay Region provided human resources support to LTCH. For simplicity, the Court will treat the two defendants as one entity on their motion for summary judgment, but will nonetheless refer to them as "Defendants".

# I

Norton was formerly employed as a Registered Nurse for Defendant McLaren Bay Regional for over seventeen years. Pl.'s Resp., Ex. 1, ECF No. 16. As an at-will employee, Norton was obligated to comply with the employer's attendance and FMLA policies, as well as the disciplinary guidelines. Despite receiving complimentary performance evaluations, Norton violated the Attendance Policy, which provides:

> An employee who accumulates three (3) absence periods in a rolling six-month period is subject to corrective action (see Corrective Action policy) and, ultimately, termination of employment if he or she fails to realign the unacceptable behavior successfully (see Termination/Loss of Employment policy). Such corrective actions are active for a twelve-month period from the date of issuance.

Defs.' Summ. J. Ex. B. at 1-2. The Corrective Action policy identifies a number of infractions that, taken cumulatively, could result in termination.

Norton received several reprimands pursuant to the Attendance Policy. On January 28, 2013, Norton received a First Written Reprimand for tardiness. Def.'s Summ. J. Ex. K. Norton received a Second Written Reprimand on February 13, *id.* Ex. L, and a Final Written Reprimand on February 22, 2013, *id.* Ex. M. The Final Written Reprimand advised Norton that any further violations of the Attendance Policy could result in termination of her employment. *Id.* Ex. M. Norton admitted that she understood that any further attendance infractions could result in termination. *Id.* Norton Dep. at 37.

## A

In May 2013, Norton began experiencing "extreme dizziness accompanied by nausea . . . and episodic photophobia . . . ." Pl.'s Resp. Ex. 1 at 107. Because of these symptoms, Norton applied for intermittent leave pursuant to the FMLA, which was approved on July 17, 2013. *Id.* Ex. 12. As a result of the approval, Defendants retroactively approved Norton for FMLA leave

for June 6, 2013; June 7, 2013; June 11, 2013; and June 12 through June 26, 2013. *Id*. Ex. 13. Thus, any tardies or absences on those days qualified as FMLA leave and did not count as violations of Defendants' Attendance Policy.

When an employee is approved for FMLA leave, Defendants require their employees to comply with the procedures set forth in the FMLA Policy. *See* Defs.' Mot. Summ. J., Ex. C. As relevant here, the FMLA Policy requires that employees notify their department "no later than two (2) hours prior to the start of the shift" that they need to take FMLA leave. *Id*., Ex. E at 5. The FMLA Policy further warns that failure to comply can result in denial of FMLA leave. *Id.*

In addition to the general FMLA Policy, Norton received a specific notice informing her of Defendants' call-in procedures. The FMLA eligibility notice provided: "When you are calling in for an FMLA day, you must call the FMLA Call Center phone number, in addition to your normal call-in procedure. This will be the only way a FMLA day will be approved." Pl.'s Resp. Ex. 6.

Norton admits that she was familiar with the procedure for requesting leave under the FMLA and had successfully followed the procedure in the past. Defs.' Mot. Summ. J., Norton Dep. 49.

**B**

The day after Norton was granted intermittent FMLA leave, on July 14, 2013, she clocked-in two minutes late. Although Norton's tardiness is not disputed, the parties provide different accounts of what happened after her tardy clock-in. Although the Court must take the facts in a light most favorable to the non-moving party, Norton, both accounts will be presented.

**i**

According to Norton, she began experiencing vertigo and nausea as she prepared for work on July 14, 2013. These symptoms continued as she drove to work, and she knew that the symptoms were affecting her ability to drive: "I was suffering from some symptoms and had to delay my arrival in order to get there safely . . . ." Defs.' Mot. Summ. J., Norton Dep. 58. Norton further contends that the "sudden onset of symptoms" made it impossible for her to contact her department and advise them of her tardiness. Resp. at 5.

After clocking-in two minutes late, Norton proceeded to complete her shift. She admits that she never told her supervisors or management the reason for her tardiness—not on July 14 and not at any other time. Pl.'s Resp., Ex. 1 at 50.

On July 18, 2013—four days after her late clock-in and one day after she had been approved for retroactive FMLA leave—Norton's supervisors requested that she attend a meeting with them and a representative from Human Resources.

Norton recalls that there were three representatives from management in the meeting: Monica Baranski, Cherri Burzynski, and Marilyn Bostick. However, Norton admits that she cannot recall much of what happened during the meeting:

> Q:          Do you recall the details of this meeting as we sit here today?
>
> Norton:   I guess it would depend on what details you want to know.
>
> Q:          Do you recall how long the meeting lasted?
>
> Norton:   No, not specifically.
>
> ….
>
> Q:          And as we're sitting here now you're telling me you don't have any specific recollections of what Marilyn said during the meeting?

>    Norton:   I mean no, I don't have specific—I can't give you a play-by-play of what happened in that meeting.  I can tell you that I, like I just said, I was shocked at what was happening, I was feeling very distressed and very sort of disoriented about the events that were taking place at the moment.

Pl.'s Resp. Ex. 1 at 52.

At the meeting, management informed Norton that her employment had been terminated due to her repeated violation of the Attendance Policy.  Although Norton admits that she does not remember specifics, she maintains that no one at the meeting asked her the reason for July 14 tardy.  Pl.'s Resp. Ex. 1 at 51.  Moreover, Norton claims that no one at the meeting took notes: "I do not recall seeing them take notes."  *Id.* at 62.  At the conclusion of the meeting, Norton claims that she protested the termination, refused to sign the termination notice, and complained that Defendants were inconsistently applying their Attendance Policy.  *Id.* at 50.  Defendants then terminated Norton's employment.

**ii**

Defendants dispute Norton's memory of the July 18 meeting with HR.  According to HR Consultant Marilyn Bostick, Norton explained that she was tardy on July 14 because she was waiting for the babysitter to arrive:

>    Q:   What do you recall from the discussions at the July 18th meeting?
>
>    Bostick:   That when we brought her in she – we talked about her being tardy on Sunday, July 14th.  And she up front indicated that she needed to get a babysitter and she had to wait for that babysitter to arrive.
>
>    Q:   Was there any further discussion?
>
>    Bostick:   The further discussion was she kind of jumped into, as it indicates in the notes, that she didn't – she wasn't disputing that she was late; she need to get the babysitter and that she didn't understand why she was sitting there at the meeting because others had poor performance and they were still here.

Defs.' Mot. Summ. J., Bostick Dep. at 9. When Ms. Bostick asked Plaintiff whether there was any other reason for her late arrival, Norton reiterated that she had to wait for the babysitter to arrive. *Id.* at 10. Ms. Bostick claims that she recorded Norton's answers contemporaneously in her notes. *Id.* Because Norton was tardy for an impermissible reason, Defendants terminated her employment for violation of the Attendance Policy.

II

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

III

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, entitles eligible employees to a total of twelve weeks of leave per year for various reasons, including leave due to "a serious health condition that makes the employee unable to perform the functions" of her position. 29 U.S.C. § 2612(a)(1)(D). When medically necessary, such leave may be taken intermittently or on a reduced leave schedule. *Id.* § 2612(b)(1). The FMLA further entitles an

eligible employee who takes leave under § 2612 to be reinstated upon her return from leave to the position she held before the leave or to an equivalent position. *See id.* § 2614(a)(1).

Norton asserts two distinct theories for recovery under the FMLA: (1) Defendants "interfered" with the exercise of her FMLA rights by "fail[ing] to designate [her] missed time as FMLA-qualifying"; and (2) Defendants "retaliated" against her for exercising her FMLA rights by terminating her employment. Compl. ¶ 48, 54; *see Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012) (stating that the Sixth Circuit recognizes an "interference" theory and a "retaliation" theory of recovery under the FMLA).

A

Norton first alleges that Defendants improperly interfered with the exercise of her FMLA rights. Norton contends that her tardy clock-in on July 14, 2014, was the result of an FMLA-qualifying condition, and therefore she was entitled to use her FMLA leave. She further contends that, by denying her the use of FMLA leave, Defendants interfered with her exercise of her FMLA rights.

The FMLA provides that it is unlawful for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). To establish a prima facie case of FMLA interference, an employee must show that; (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing FMLA, § 105(a)(1), 29 U.S.C. § 2615(a)(1)).

**i**

Defendants contend that Norton cannot establish a prima facie case of FMLA interference because she cannot show that gave notice of her intention to take leave. Defendants note that Norton never provided notice—either the morning of July 14, 2014 or any time thereafter—that her tardy clock-in was due to an FMLA-qualifying illness.

When FMLA leave is to be taken intermittently, the employee "shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown." 29 C.F.R. § 825.302(a). Moreover, the regulations mandate that the employee give sufficient information to the employer so that the employer is aware that the leave is due to an FMLA-qualifying illness—even where, as here, the employer has already granted a prior request for leave:

> An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA—qualifying leave, and the anticipated timing and duration of the leave. . . .When an employee seeks leave due to a FMLA—qualifying reason, for which the employer has previously provided FMLA-protected leave, the employee must specifically reference the qualifying reason for leave or the need for FMLA leave.

29 C.F.R. § 825.302(c). Importantly, the regulations make clear that an employee "has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying. Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying." *Id.* In other words, the regulations impose two burdens on an employee seeking FMLA leave: (1) the employee must provide sufficient notice to the employer and (2) the employee must respond to an employer's questions regarding whether an absence is FMLA-qualifying. *Id*.

Here, Norton did neither: she did not provide any notice to Defendants that she was seeking FMLA leave for her July 14, 2014 tardy, nor did she bring up her FMLA-qualifying reason during her July 18, 2014 termination meeting.

Norton admits that she did not call the FMLA Call Center on July 14, nor did she call anyone else at Bay Special Care prior to coming to work that day. Defs.' Mot. Summ. J., Norton Dep. 50. Nor did she later provide any member of management with notice that her July 14 tardy was due to an FMLA-qualifying illness:

> Q: But specifically on the morning of July 14th, that Sunday, did you talk to any member of management or HR about vertigo as it relates to your—
>
> A: On that day did I discuss it?
>
> Q: Correct.
>
> A: No. That was a Sunday.
>
> Q: Did you talk to any member of management on July 15th about your tardiness on the 14th?
>
> A: No, I did not.
>
> Q: Did you talk to any member of management or HR on July 16th about your tardiness on the 14th?
>
> A: I do not believe so, no.
>
> Q: How about July 17th, did you talk to Monica or any other member of management or HR about your tardiness on the previous Sunday, the 14th?
>
> A: No. . .
>
> Q: After you were terminated did you ever call a member of management or HR to say that the tardiness on July 14th was caused by FMLA or vertigo?
>
> A: No.

Norton Dep. 55-56. Norton did not provide any notice to her employer that she needed to take FMLA-qualifying leave on July 14. She did not provide any notice before arriving to work; she did not provide notice immediately after the symptoms passed; she did not provide notice on the day she took the allegedly-qualifying leave; and she did not provide notice during the next three days. Thus, Norton did not provide sufficient verbal notice to Defendants "as soon as practicable" as required by the regulations.

Moreover, Norton admits that during the July 18, 2014 HR meeting, not only did she not bring up FMLA, she did not provide any reason for tardiness at all:

> Q: Did you tell them why you were late on Sunday, July 14th?
>
> A: I don't believe that I did.
>
> Q: Do you recall your need to setup care for your children as being why you were late, telling them that was the reason you were late on July 14th?
>
> A: I do not recall saying that, no.

Norton Dep at 51.[2] Even if, as Norton claims, she was unable to inform Defendants that she would be tardy prior to clocking-in late, she has provided no explanation or excuse for not providing later notice to them. She therefore has not met her obligations of providing sufficient verbal notice to Defendants regarding whether her tardiness was FMLA-qualifying. Accordingly, Norton cannot satisfy her prima facie burden, and her FMLA interference claim will be dismissed.

### ii

Norton, although admitting she did not provide actual notice to Defendants, nonetheless advances several arguments that contend, in effect, that the failure to provide actual notice is not

---

[2] Although Defendants claim that Norton admitted that her tardiness was the result of waiting for her babysitter, the Court must construe all facts in a light most favorable to Norton, the non-moving party. Thus, Norton's version of the July 18, 2014 termination meeting will be accepted: that she did not provide any reason for her tardiness.

dispositive. First, Norton unpersuasively claims that she provided sufficient notice because management knew she suffered from vertigo. She explains that not only had she been previously approved for FMLA-leave related to vertigo, she had suffered a severe vertigo incident only the day before, on July 13th. She therefore contends that Defendants were on notice that her July 14th tardy may be the result of an FMLA-qualifying illness and should have inquired further.

Although the FMLA imposes an obligation on employers to inquire into whether an absence or tardy is due to an FMLA-qualifying illness, 29 C.F.R. § 825.303(b), that obligation only arises after an employee has provided adequate notice under the FMLA. *Brenneman*, 366 F.3d at 422 ("Once an employer receives sufficient notice that the eligible employee is requesting leave for a FMLA-qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to all within the FMLA."). Indeed, the FMLA does not impose any affirmative duty on employers to inquire into the health of their employees, without any notice from the employee. *Id.* ("The FMLA does not require an employer to be clairvoyant."); *see de la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 687 (7th Cir. 2008) ("The FMLA does not require employers to play Sherlock Holmes, scanning an employee's work history for clue as to the undisclosed, true reason for an employee's absence."); *Brock v. United Grinding Tech., Inc.*, 257 F. Supp. 2d 1089, 1100 (S.D. Ohio 2003) ("To interpret the FMLA in such a way that the employer must investigate an employee's leave whenever it is informed that the employee is 'ill' or 'sick' would certainly create a burden on the employer that Congress did not intend.").

Thus, although Norton is correct in noting that she need not expressly assert FMLA rights or even mention the FMLA, she was nonetheless obligated to provide reasonably adequate notice to apprise Defendants that her July 14 tardy was related to a serious health condition. *See*

*Gipson v. Yought Aircraft Indus., Inc.*, 387 F. App'x 548, 556 (6th Cir. 2010) (rejecting argument that the employer had knowledge that employee's subsequent absences were related to serious health condition because the employer was aware that the employee's prior absences were related to a serious health condition). As explained above, Norton admits that she never provided any explanation for her July 14 tardy, let alone an explanation that would provide adequate notice under the FMLA to trigger an employer obligation to investigate.

Moreover, the fact that Norton had previously taken intermittent FMLA-leave for her vertigo does not mean she provided sufficient notice of her intent to take FMLA leave on July 14, 2014. Indeed, the Sixth Circuit expressly rejected this argument in *Brenneman*. In *Brenneman*, the Sixth Circuit explained that, even though "defendant[-employer] knew the plaintiff has diabetes and that plaintiff had FMLA-qualifying, diabetes-related absences [in the past]," a phone call from plaintiff explaining that he "wasn't doing well" that day was insufficient notice. Thus, the mere fact that an employee has been approved for intermittent FMLA-leave is, by itself, insufficient to trigger an obligation on the part of the employer to investigate any absences or tardies. *See Layman v. C & D Techs., Inc.*, 2004 WL 6074953, at *13 (E.D. Tenn. Nov. 4, 2004) ("That C & D was aware of Layman's prior medical condition [for which she used FMLA leave] is inconsequential; Layman still failed to provide C & D any information from which it could conclude that the May 2002 illness [at issue] was related to her previous condition."). Therefore, although Norton had been approved for intermittent leave and had even taken leave in the past, these facts did not provide sufficient notice to Defendants that her July 14 tardy may be due to an FMLA-qualifying illness, rather than for some other reason.

Alternatively, Norton claims that Defendants' FMLA-notice policy—which requires employees to provide two-hours' notice before an absence or tardy—violates the FMLA. In

addition, Norton contends that even if the policy does not violate the FMLA, the unpredictability of her illness prohibited her from complying with Defendants' call-in procedures.

The FMLA permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances. *See Srouder v. Dana Light Axle Manufacturing, LLC*, 725 F.3d 608, 614 (6th Cir. 2013) (citing 29 C.F.R. § 825.302(d)). "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." 29 C.F.R. . § 825.302(d).

In the case of a medical emergency, Defendants' FMLA-notice policy requires employees to notify their department "no later than two (2) hours prior to the start of the shift" that they need to take FMLA leave. *Id*., Ex. E at 5. In addition to giving notice to their department, employees must also call Defendants' FMLA Call Center. Pl.'s Resp. Ex. 6. But even if an employee does not call before their shift, Defendants' FMLA policy requires employees to give notice "as soon as practicable, ordinarily within one or two business days from the first occurrence." Ex. C at 4. Norton contends that she was unable to comply with this policy because she was unable to predict the onset of vertigo incidents.

Even assuming that Norton's failure to comply with Defendants' FMLA call-in procedures influenced her termination, she has not shown she was unable to comply with the call-in procedures. Norton testified that she knew of the policy requiring employees to call-in regarding FMLA-qualifying illnesses; she had previously used the FMLA Call Center number. Defs.' Mot. Summ. J., Norton Dep. 49. Moreover, she admits that she began experiencing vertigo and accompanying symptoms before she left for work:

> Q: And it's your testimony that sometime prior to seven a.m. while you were at home you were having symptoms, experiencing vertigo, correct?

> A:   Yes. Yes, it is. Along with the vertigo though, we keep going back to just the word vertigo, there were other symptoms, there was nausea, you know, along with the vertigo.

*Id.* at 58. In addition, she admits that the symptoms were severe enough that she knew she would need to delay her arrival to work: "I was suffering from some symptoms and had to delay my arrival in order to get there safely so it wasn't—I wasn't anticipating needing to call either the FMLA line or the supervisor because I was en route to work." *Id.* Thus, somewhat incongruously, Norton admits that she was suffering from symptoms severe enough that she knew she would need "to delay her arrival to work," yet she couldn't "anticipat[e] needing to call either the FMLA line or the supervisor . . . ." *Id.*

Norton has not shown that she was incapable of complying with Defendants' FMLA-notice procedures, which require an employee to provide notice "as soon as practicable." Importantly, Norton never provided any notice to Defendant that she qualified for FMLA leave on July 14, much less providing notice as soon as practicable. Moreover, Norton admits that she was suffering symptoms at home before she left for work, and that she knew she would need "to delay [her] arrival" due to those symptoms. Despite knowing that her vertigo may necessitate a "delay", she did not call-in to the FMLA Call Center. Instead, she drove to work, clocked-in late, and did not provide any indication to management that her tardy was related to vertigo. Because she was experiencing symptoms at home and knew those symptoms may affect her arrival time, she did not give notice to Defendants as soon as was practicable. *See Allen v. STHS Heart, LLC*, 2010 WL 2133901, at *8 (M.D. Tenn. May 21, 2010) ("If [plaintiff] was physically able to drive, she was physically able to place a phone call before leaving the house. By waiting until she arrived at work to notify her supervisor of her condition, she failed to give notice 'as soon as practicable under the facts and circumstances of the particular case.'"); *Brenneman v.*

*MedCentral Health Sys.*, 366 F.3d 412, 425 (6th Cir. 2004) (noting that an employee did not give timely notice because he failed to notify his employer of unforeseeable FMLA leave once he was "physically able to" do so). Thus, Norton did not provide Defendants with notice that she would be tardy as soon as practicable, despite experiencing symptoms at home and knowing that those symptoms would affect her arrival time.

**B**

Norton also alleges that Defendant improperly retaliated against her for exercising her rights under the FMLA. FMLA retaliation claims arise under 29 U.S.C. § 2615(a)(2), which provides that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." The key issue in an FMLA retaliation claim is "whether an employer retaliated or discriminated against an employee *because* the employee invoked her FMLA rights." *Chavez v. Dakkota Integrated Sys., LLC*, 832 F. Supp. 2d 786, 799 (W.D. Ky. 2011) (emphasis added).

"To establish a claim of unlawful retaliation under the FMLA, a plaintiff must show (1) that he availed himself of a protected right under the FMLA by notifying his employer of his intent to take leave, (2) that he was adversely affected by an employment decision, and (3) a causal connection between his exercise of a right under the FMLA and the adverse employment decision. *Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 557 (6th Cir. 2010) (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)) (internal quotation marks omitted). Under a retaliation theory, the employer's motive is an integral part of the analysis; therefore, as part of the prima facie case, the employer must have notice that the employee is invoking her FMLA rights. *Edgar v. Jac Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) ("The employer's motive is relevant because retaliation claims impose liability on

employers that act against employees specifically because those employees invoked their FMLA rights.") (emphasis original).

Defendants claim that Norton cannot establish a prima facie case of retaliation because she cannot show that she notified them of her intent to take FMLA leave on July 14, 2013. Although Norton contends that her July 14 tardy was due to an FMLA-qualifying event, she never provided notice to Defendants. Because she did not provide notice to Defendants, she cannot meet the first requirement of a prima facie case for retaliation: that she availed herself of a protected right under the FMLA by notifying her employer of her intent to take leave. *See Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 557 (6th Cir. 2010). Accordingly, Norton's FMLA-retaliation claim will be dismissed.

### IV

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

It is further **ORDERED** that Plaintiff Norton's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

                                              s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge

Dated: September 9, 2014

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 9, 2014.

                            s/Tracy A. Jacobs
                            TRACY A. JACOBS